**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE WESTERN DISTRICT OF MISSOURI**

In re:

| | |
|---|---|
| JLK CONSTRUCTION, LLC, <br><br>                                    Debtor. | Case No.: 23-50034- btf11 <br> Chapter 11 |
| JLK CONSTRUCTION, LLC, <br><br>                                    Plaintiff, <br><br> v. <br><br> PREMIUM MERCHANT FUNDING 18, LLC, a Delaware limited liability company; SAMUEL A. BRUGMAN, an individual, <br><br>                                    Defendants. | Adv. Pro. No. |

**<u>COMPLAINT FOR:</u>**

**FRAUD; RESCISSION; AVOIDANCE OF FRAUDULENT TRANSFERS;**

**AVOIDANCE OF TRANSFERS; PRESERVATION AND RECOVERY OF**

**TRANSFERS; DECLARATORY RELIEF; FRAUD;**

**USURY; UNJUST ENRICHMENT; AVOIDANCE OF FRAUDULENT**

**TRANSFERS, AVOIDANCE OF TRANSFERS; PRESERVATION AND**

**RECOVERY OF TRANSFERS;**

**RACKETEERING (18 U.S.C. § 1962); AND**

**ACCOUNTING**

1

PMF

# I.

## INTRODUCTION,

## JURISDICTION, AND VENUE

Plaintiff JLK CONSTRUCTION, LLC, a Missouri limited liability company, the debtor and debtor-in-possession in the above-entitled case (the "Debtor" or "Plaintiff") hereby respectfully alleges and states as follows:

1.      Plaintiff, a Missouri limited liability company, is the debtor and debtor-in-possession in the Bankruptcy Case, with the rights, powers, and duties of a trustee. 11 U.S.C. §§1107 and 704.

2.      At all times herein mentioned, Defendant in this adversary proceeding is PREMIUM MERCHANT FUNDING 18, LLC, a Delaware limited liability company with its principal place of business in New York ("PMF") which is not and was not registered to transact business in the State of Missouri, and which therefore unlawfully transacted business in the State of Missouri in violation of MO. REV. STAT. § 347.153 (2015), when it fraudulently induced a small Missouri business, the Plaintiff here, to make extortionate and fraudulent loans that PMF misleadingly labeled a sale of "future receipts". Plaintiff is further informed and believes and based thereon alleges that PMF solicits loans and brokers loans for other lenders who made loans to this Debtor, including, but not limited to Legend Advance Funding II, LLC, White Road Capital, LLC, dba GFE Holdings and GCM CAPITAL LLC,

3.      Plaintiff is informed and believes and based thereon alleges that Defendant SAMUEL A. BRUGMAN, is an individual residing in the State of Michigan ("BRUGMAN").

4.      Plaintiff filed a petition under Chapter 11 of Title 11 of the United States Code on February 13, 2023 (the "Petition Date"), initiating *In re JLK Construction*, LLC, Case No. 23-50034-BTF (the "Bankruptcy Case").

PMF

5.     Within all times herein mentioned, Plaintiff was insolvent as defined by the *United States Bankruptcy Code*, 11 U.S.C. § 101(32).

6.     The claims in this adversary proceeding arise in and relate to the Bankruptcy Case.

7.     The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

8.     This adversary proceeding is a core proceeding pursuant to *inter alia*, 28 U.S.C. §§ 157(b)(2)(A), (E), (F) and (H) and (O) or a related proceeding pursuant to 28 U.S.C. §1334(b).

9.     If this adversary proceeding is determined to be a non-core proceeding, Plaintiff consents to the entry of final orders and judgments by the bankruptcy judge. Each Defendant is hereby notified that *Fed. R. Bankr. P*. 7012(b) requires it to admit or deny whether this adversary proceeding is a core or non-core proceeding and, if non-core, to state whether each Defendant consents, or does not consent, to the entry of final orders or judgment by the bankruptcy judge.

10.     This adversary proceeding is a civil proceeding arising in and related to the Bankruptcy Case, and such case is pending before this Court. Accordingly, venue in this Court is proper under 28 U.S.C. § 1409(a).

11.     Plaintiff is unaware of the names of other potential defendants who may be responsible for the unlawful practices, acts, conduct, and occurrences alleged herein. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of these unknown defendants, and to detail the roles each played once Plaintiff ascertains their identities and/or manner of participation in the wrongful conduct herein described.

12.     At all relevant times, as alleged more fully herein, each Defendant acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint-venturer of the other

3

PMF

Defendant, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture. Each of the Defendants' acts alleged herein was done with the permission and consent of each of the other Defendants.

## II.

## FACTUAL BACKGROUND

13.     Beginning in or about 2019, Plaintiff received telephone solicitations from BRUGMAN on PMF's behalf, offering PMF's Premium Business Financing Service.

14.     On or about February 1, 2022, by interstate cell phone communication and interstate e-mail communication, Defendants' Premium Financing Service pitch to Plaintiff was that:

A.      Lenders for which it brokered transactions were legitimate business lenders;

B.      Lenders for which it brokered transactions charged reasonable interest rates;

C.      Loans which it brokered were based on commercially reasonable terms that would be repaid from daily or weekly withdrawals from Plaintiff's bank account; and

D.      Lenders for which it brokered transactions would work with Plaintiff just like a bank but would be easier to work with than a bank.

15.     When Defendants made the foregoing representations and offered financing to Plaintiff, Defendants were aware of the following facts:

A.      Plaintiff was a Missouri limited liability company;

B.      Plaintiff was in Buchanan County, Missouri;

C.      Plaintiff had no regular business operations outside of Missouri; and

4

PMF

D.     Plaintiff had no contacts with New York, Defendants' place of business and state of organization, the stated jurisdiction, venue, and choice of law designated by the Loan Documents and Consulting Agreement.

### The Consulting Agreement

19.    On or about February 14, 2022, Plaintiff and Defendant executed a one-year Consulting Agreement pursuant to which Defendants contracted to provide a:

> broad array of services and solutions for small businesses. PMF advises merchants on reliable, safe, and innovative financing and payments solutions combined with *individualized* attention to provide *tailored* solutions that respond to the various needs of the business, including but not limited to Accounting, Payroll Processing, Marketing, Branding and more. Our all-inclusive bundle will provide Client with a thorough review of the various metrics of their business and provided *tailored* solutions that solve the business's most pressing needs.

(*Emphasis added.*) A true and correct copy of PMF's Consulting Agreement is attached hereto as *Exhibit "1"*.

20.    Pursuant to the Consulting Agreement, Plaintiff agreed to pay a 9% flat fee commission for Defendants' services payable at the earlier of the (i) completion of any of the services contemplated by the Consulting Agreement or (ii) the delivery of any financing.

21.    As a result of the Consulting Agreement, Defendants had a confidential relationship with the Plaintiff upon which Plaintiff relied, and trusted Defendants with the management of Plaintiff's business and property. The Consulting Agreement confers on Defendants authority to communicate and make all representations on Plaintiff's behalf to carry out the services contemplated by the Consulting Agreement.

22.    At all times mentioned herein, as a result of the Consulting Agreement, Defendants acted as Plaintiff's agent and had fiduciary duties to Plaintiff to act in the best interests of the Plaintiff's business.

PMF

23.     Defendants' representations of the services which they promised fraudulently induced Plaintiff to execute the Consulting Agreement. Thereafter, Defendants failed to provide the services as represented in the Consulting Agreement resulting in a failure of consideration. Instead of providing individualized attention to provide a tailored solution to respond to Plaintiff's monthly cash flow deficits, within weeks of the execution of the Consulting Agreement, Defendants arranged for and had Plaintiff execute a $5,000,000.00 Note, the primary purpose of which was to pay Defendants' 9% commission, in the sum of $450,000.00, which hastened Plaintiff's demise leading to Chapter 11 by plunging it deeper into debt. Plaintiff's execution of the $5,000,000.00 Note provided no material net benefit to Plaintiff and in fact, increased its total debt by approximately $1,000,000.00.  Defendants were the primary beneficiaries of the Consulting Agreement.

24.     Plaintiff relied on Defendants' representations of the array of services for which the parties contracted, and which Defendants promised to provide, to Plaintiff's detriment. Defendants' failures to provide its promised services substantially defeated the purpose of the Consulting Agreement.

25.     In March 2022, Defendants, as Plaintiff's agent pursuant to the Consulting Agreement, arranged a loan dated March 31, 2022 between Plaintiff and the U.S. Small Business Administration pursuant to which Plaintiff promised to pay Newtek Small Business Finance, LLC ("Newtek") the principal amount of $5,000,000.00 with a variable interest rate of Prime plus 2.75% and a maturity date of March 31, 2032 (hereinafter "Newtek Loan"), pursuant to which Plaintiff executed a Security Agreement, UCC Financing Statement, a Mortgage pledging personal and real property collateral to Newtek. Plaintiff's principal, Jesse L. Kagarice, executed an Unconditional Guarantee; his spouse, Jayme M. Kagarice, executed an Unconditional Limited Guarantee and each of them executed a Deed of Trust on their personal residence in favor of Newtek.

PMF

26. On or about April 1, 2022, Plaintiff transferred to Defendants the sum of $450,000.00 as payment for its commission on the Newtek Loan that Defendants brokered ("Commission Transfer").

27. Plaintiff's borrowing $5,000,000.00 to consolidate multiple loans did not appreciably lower its monthly obligations or its cash flow deficits.

<u>April 5th Loan</u>

19. On April 5, 2022, Defendants made a loan of money to Plaintiff, in the amount of $100,000.00 (April 5th Loan), for which Plaintiff was required to repay Defendant PMF the sum of $147,000.00 ("Receivables Purchased Amount") within 120 business days. Attached hereto as *Exhibit "2"* is a true and correct copy of the Merchant Agreement (the "Loan Documents") pursuant to which Defendants made such loan to Plaintiff. Plaintiff paid Defendants $163,700.00.

20. The effective daily interest on the April 5th Loan was .8063%, or 294.3% annually, more than the allowable interest rate pursuant to New York or Federal law.

21. As part of their ongoing fraud and racketeering scheme, Defendants drafted the Loan Documents without disclosing a material term of the loan, i.e., the interest rate, that it charged to Plaintiff. Plaintiff made no alternations to Defendants' form loan document. In fact, Plaintiff alleges that the interest rate charged by the Defendant to the Plaintiff was exorbitant, unconscionable, and criminal.

22. Defendants transmitted the Loan Documents to Plaintiff by interstate e-mail transmission for signature by DocuSign.

23. The Loan Documents violate New York and/or Missouri law because they fail to disclose the interest, which is a material term of the contract for a loan. The annual interest rate or cost of funding that Defendants charged to Plaintiff and which Plaintiff paid was 294.3%, which violates New York law because the interest rate for the Loan exceeds the maximum interest rate permitted by New York law.

7

PMF

24.     The Loan Documents do not identify Plaintiff's receivables that Defendants purported to purchase by date, percentage, name, or any other identifying data that demonstrate Plaintiff's ownership of such receivables.

25.     Plaintiff relied upon Defendants' representations and on the basis thereof accepted the April 5th Loan offered by the Defendants.

26.     As a result of the Loan Documents, Defendants had a confidential relationship with the Plaintiff upon which Plaintiff relied, and trusted Defendants with the management of Plaintiff's property. The Loan Documents dictate that that manner of Plaintiff's repayment to Defendants was Defendants' access to and daily withdrawals of money directly from Plaintiff's designated bank account.

27.     Defendants intentionally failed to disclose the material terms of the April 5th Loan by failing to disclose the interest rate that Defendant charged and that the transaction that Defendants fraudulently offered was and is a loan of money.

28.     Defendants intentionally misled Plaintiff by placing on the first page of the Loan Documents a percentage rate of 52% that was intended to confuse, mislead, and trick Plaintiff into believing that the stated interest percentage was the interest rate for the Loan, when in fact, the stated percentage rate related to the percentage of daily receivables to be deducted from Plaintiff's bank account until the loan was repaid.

29.     The actual purpose of the Loan referenced in *Exhibit "2"* was for the Defendants to loan money to Plaintiff at an annual interest rate of more than 25%.

30.     Defendants knew, or had reasons to know, the Loan bore interest rate of more than 25% per annum.

31.     Defendants knew or had reason to know, that Plaintiff would pay Defendants interest at a rate more than 25% per annum on all the funds received from the Loan between Plaintiff and Defendants.

PMF

32.     At the time the Defendants made the Loan to Plaintiff, Defendants were transacting business in Missouri through repeated and successive transactions of business with Plaintiff, making the Loan to Plaintiff and taking repeated payments from Plaintiff's bank accounts, beginning in April 2022 through and including September 2022.

33.     Defendants violated Missouri law because PMF was not authorized to conduct business in Missouri. Defendants continued to do business in the State of Missouri by making the Loan and withdrawing funds from Plaintiff's accounts.

34.     Plaintiff made the series of transfers to Defendant PMF identified in *Exhibit "3"* attached hereto on account of the April 5th Loan from the property of the Plaintiff in the sum of $163,700.00 (hereinafter "Loan Transfers").

35.     Defendants drafted the loan documents to effectuate a fraud on Plaintiff by failing to disclose the interest rate payable on the Loan when Defendants had legal duty to do so and upon which Plaintiff reasonably relied and was, in fact, defrauded by such false inducements.

36.     Defendants offered such loans to the Plaintiff through fraudulent representations, including the statement that "Merchant is selling a portion of a future revenue stream to PMF at a discount, not borrowing money from PMF," and at section 1.10 "Purchase price is not intended to be, nor shall it be construed, as a Loan from PMF to Merchant."

37.     The transaction was a loan because the agreements relied on the creditworthiness of Plaintiff, rather than its customers, who owed Plaintiff receivables.

38.     When Defendants made the Loan to Plaintiff, Defendants knew the effective annual interest rate was more than 294% annually and that such rates were unconscionable. Defendants knowingly and intentionally engaged in loan sharking in Missouri when it made the Loan, in violation of New York and Federal law.

PMF

39.     Defendants' Loan Documents provide for recovery of attorneys' fees and costs and Plaintiff is therefore entitled to an award of attorneys' fees and costs pursuant to Missouri law, MO. REV. STAT. § 455.075 (2022) and New York Law, N.Y. DEBT. & CRED. LAW § 278(A).

## FIRST CLAIM FOR RELIEF:

### FRAUD

(Consulting Agreement)

40.     Plaintiff alleges paragraph 1 through 39, inclusive, as though fully set forth herein.

41.     The Consulting Agreement, *"Exhibit 1",* was unconscionable at the time it was made and is therefore unenforceable pursuant to NEW YORK U.C.C. § 2-302 and MISSOURI U.C.C. § 400.2-302.

42.     Defendants knew or should have known that Consulting Agreement falsely represented that Defendants would perform the array of individualized and tailored services for which the parties contracted, and which Defendants promised to provide.

43.     Plaintiff reasonably relied upon these false representations and was induced to execute the Consulting Agreement by these fraudulent and deceitful material falsehoods and believed Defendants' statements to be true.

44.     Plaintiff was damaged by the above-described fraud in a sum of not less than $450,000.00.

45.     Defendants' conduct with respect to Plaintiff was egregious and directed at Plaintiff failing to provide individualized or tailored solutions or providing any of its custom Small Business Solutions, which was part of a pattern of activity directed to the public generally and Plaintiff is entitled to punitive damages in the sum of $1,500,000.00.

PMF

## SECOND CLAIM FOR RELIEF:

### RESCISSION

(Consulting Agreement)

46.     Plaintiff alleges paragraph 1 through 39 inclusive, and Paragraphs 41 through 45 inclusive, as though fully set forth herein.

47.     By the filing of this adversary proceeding, Plaintiff provides Defendants with notice of rescission of the Consulting Agreement, which is attached hereto as *Exhibit "1"*. Plaintiff performed all obligations to Defendants except those obligations that Plaintiff was prevented or excused from performing.

48.     Plaintiff is entitled to a judgment of rescission as Defendants fraudulently induced Plaintiff to execute the Consulting Agreement, there was a failure of consideration by Defendants, and each of them, who each breached the terms of the Consulting Agreement by failing to perform the services for which the parties contracted and specifically failed to provide the "array of individualized and tailored services for which the parties contracted, and which Defendants promised to provide" which substantially defeated the purpose of the Consulting Agreement.

49.     Plaintiff did not benefit from the Consulting Agreement and therefore, there it is futile to offer return of any "consideration" that Plaintiff might have received as a result of the Consulting Agreement. Plaintiff's execution of the $5,000,000.00 Note provided no material net benefit to Plaintiff and in fact, increased its total debt by $1,000,000.00. The Defendants were the primary beneficiaries of the Consulting Agreement.

50.     Plaintiff has been damaged in the amount of no less than $450,000.00, according to proof, plus interest as provided by law.

11

PMF

**THIRD CLAIM FOR RELIEF**:

**AVOIDANCE OF FRAUDULENT TRANSFER**

(11 U.S.C. § 548(a)(l)(B), MO. REV. STAT. § 428.024,

NY DEBT. & CRED. LAW §§ 270-280)

(Consulting Agreement)

51.    Plaintiff alleges paragraph 1 through 39, inclusive, Paragraphs 41 through 45, inclusive, and Paragraphs 47 through 50 inclusive, as though fully set forth herein

52.    Plaintiff made the Commission Transfer from property of the estate.

53.    Plaintiff did not receive reasonably equivalent value for the Commission Transfer.

54.    At the time Plaintiff made the Commission Transfer, Plaintiff was insolvent, or became insolvent because of such transfer for the following reasons:

A.    The sum of Plaintiff's debts was greater than the value all of Plaintiff's property, determined at a fair valuation;

B.    Plaintiff was engaged or was about to engage in a business or a transaction for which Plaintiff's remaining assets were unreasonably small in relation to the business or transaction; and

C.    Plaintiff intended to incur, or it believed or should have reasonably believed that it would incur, debts beyond its ability to pay as they became due thereafter.

54.    The Commission Transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(B), the *Uniform Fraudulent Transfer Act*, MO. REV. STAT. § 428.024 and the *Uniform Voidable Transactions Act*, N.Y. DEBT. & CRED. LAW §§ 270-280 and Plaintiff is entitled to a judgment for relief in no less than $450,000.00, the sum that Plaintiff paid Defendant pursuant to the Consulting Agreement, and for a declaration that the

PMF

Consulting Agreement is void, in addition to attorneys' fees pursuant TO N.Y. DEBT. &

CRED. LAW § 278(A.)

## FOURTH CLAIM FOR RELIEF:

### AVOIDANCE OF TRANSFERS

(11 U.S.C. § 544)

(Commission Transfer)

55.     Plaintiff alleges paragraph 1 through 39, inclusive, Paragraphs 41 through

45, inclusive, and Paragraphs 47 through 50 inclusive, and Paragraphs 52 through 54,

inclusive, as though fully set forth herein.

56.     Plaintiff made the Commission Transfer from property of the estate.

57.     Plaintiff did not receive reasonably equivalent value for the Commissions

Transfer.

58.     At the time Plaintiff made the Commission Transfer, Plaintiff was insolvent

or became insolvent because of such transfers for the following reasons:

A.      The sum of Plaintiff's debts was greater than the value all of Plaintiff's

property, determined at a fair valuation

B.      Plaintiff was engaged or was about to engage in a business or a transaction

for which Plaintiff's remaining assets were unreasonably small in relation to the business

or transaction; an

C.      Plaintiff intended to incur, or it believed or reasonably should have believed

that it would incur, debts beyond its ability to pay as they became due thereafter.

59.     Plaintiff made the Commission Transfer when it owed money to at least one

creditor, and such creditor holds an unsecured claim that is allowable pursuant to 11

U.S.C. § 502.

13

PMF

**FIFTH CLAIM FOR RELIEF:**

**PRESERVATION AND RECOVERY OF TRANSFERS**

(11 U.S.C. §§ 550 and 551)

(Commission Transfer)

55.     Plaintiff alleges paragraph 1 through 39, inclusive, Paragraphs 41 through 45, inclusive, and Paragraphs 47 through 50, inclusive, Paragraphs 52 through 54 and Paragraphs 56 through 59, inclusive, as though fully set forth herein.

56.     The Commission Transfer in the sum of $450,000.00 is an avoidable pursuant to 11 U.S.C. § 548(a)(l)(B), MO. REV. STAT. § 428.024, NY DEBT. & CRED. LAW §§ 270-280.

57.     The Commission Transfer in the sum of $450,000.00 is avoidable pursuant to 11 U.S.C. § 548(a)(l)(B), MO. REV. STAT. § 428.024, NY DEBT. & CRED. LAW §§ 270-280.

58.     Plaintiff moves to preserve and recover each transfer as provided by 11 U.S.C. §§ 550 and 551.

**SIXTH CLAIM FOR RELIEF:**

**DECLARATORY RELIEF**

(April 5th Loan)

59.     Plaintiff alleges Paragraphs 1, inclusive through 39, as though fully stated in full herein.

60.     Plaintiff alleges the transaction documented and reflected in the Loan Documents, *"Exhibit 2,"* was and is *void ab intio* and unenforceable pursuant to New York law that provides that for a loan found to be criminally usurious, for the interest rates of more than 25%, is unenforceable. Defendant's Loan to Plaintiff was and is criminally usurious. N.Y. PENAL LAW § 190.42.

14

61.     Plaintiff alleges the transaction documented and reflected in the Loan Documents was a loan of money under Missouri law and New York law. Defendants disputes this contention and alleges the transactions reflected in the Loan Documents are purchases of "future receipts", not loans.

62.     Plaintiff alleges that the transaction documented and reflected in the Loan Documents was a loan of money as Defendant bore the risk of non-performance because: a) although the Loan Documents contain a reconciliation provision, Defendant did not permit reconciliation; b) the selection of daily payment rates did not represent a good faith estimate of receivables; c) the Loan Documents provisions permit rejection of an automated debit without prior notice an event of default entitling Defendant to immediate repayment of the full uncollected purchased amount; and d) the Loan Documents authorize Defendant to collect on the personal guaranty in the event of Plaintiff's inability to pay or bankruptcy.

## SEVENTH CLAIM FOR RELIEF:

### FRAUD

(April 5th Loan)

63.     Plaintiff alleges Paragraphs 1 through 39, inclusive, and Paragraphs 60, inclusive through Paragraph 62, inclusive, as though fully stated in full herein.

64.     Defendants fraudulently represented to Plaintiff that the interest rate chargeable for the Loan was reasonable and lawful, when in fact the rate was more than the allowed rates pursuant to Missouri, New York, and Federal law and which is exorbitant.

65.     Defendants knew that its Loan Documents falsely represented that the transaction was a sale of future receipts and intended that Plaintiff would act in the manner reasonably contemplated by the Loan Documents that Defendants drafted.

PMF

66.     Plaintiff reasonably relied upon these false representations and was induced to execute the Loan Documents by these fraudulent and deceitful material falsehoods and believed Defendants' statements to be true.

67.     Plaintiff was damaged by the above-described fraud in a sum of not less than $163,700.00.

68.     Defendants' conduct with respect to Plaintiff was egregious and directed at Plaintiff by charging it interest rate more than ten times the interest rate that is considered criminal usury under New York law, which was a pattern of activity directed to the public generally and Plaintiff is entitled to punitive damages in the sum of $500,000.00.

## EIGHTH CLAIM FOR RELIEF:

### USURY

69.     Plaintiff alleges Paragraphs 1 through 39 inclusive, Paragraphs 60, inclusive through 62, inclusive and Paragraphs 64, inclusive through Paragraph 68, inclusive, as though fully stated in full herein.

70.     Defendants knowingly, willfully, and intentionally charged interest on the sums advanced pursuant to the Loan more than New York's usury limitations.

71.     Defendant charged an interest rate on the Loan that is more than the 25% usury limitations in N.Y. PENAL LAW § 190.42.

72.     Defendant charged interest rates on the Loan more than 45%, in addition to other fees that are usurious and extortionate themselves.

73.     The Loan to Plaintiff is criminally usurious, compelling forfeiture of interest./

74.     The Loan to Plaintiff is criminally usurious and is therefore unenforceable.

75.     Plaintiff is entitled to an award of attorneys' fees and costs.

16

PMF

## NINTH CLAIM FOR RELIEF:

### UNJUST ENRICHMENT

(April 5th Loan)

76.     Plaintiff alleges Paragraphs 1 through 39 inclusive, Paragraphs 60, inclusive through 62, inclusive, Paragraphs 64, inclusive through Paragraph 68, inclusive, and Paragraphs 70, inclusive through 74, inclusive, as though fully stated in full herein.

77.     Defendants unjustly retained the benefit at Plaintiff's expense.

78.     Defendant financially benefitted at the Plaintiff's expense from the Loan; equity and good conscience require restitution in the amount of at least $163,700.00, as well as damages by the loss of business to Plaintiff.

79.     There is a lack of remedy under the law.

## TENTH CLAIM FOR RELIEF:

### AVOIDANCE OF FRAUDULENT TRANSFER

(11 U.S.C. § 548(a)(l)(B), MO. REV. STAT. § 428.024,

NY DEBT. & CRED. LAW §§ 270-280)

(April 5th Loan)

80.     Plaintiff alleges paragraph 1 through 39, inclusive, as though fully set forth herein.

81.     Plaintiff made the Loan Transfers from property of the estate.

82.     Plaintiff did not receive reasonably equivalent value for the Loan Transfers.

83.     At the time Plaintiff made the Loan Transfers, it was insolvent, or became insolvent because of such transfers for the following reasons:

A.      The sum of Plaintiff's debts was greater than the value all of Plaintiff's property, determined at a fair valuation;

PMF

B.      Plaintiff was engaged or was about to engage in a business or a transaction for which Plaintiff's remaining assets were unreasonably small in relation to the business or transaction; and

C.      Plaintiff intended to incur, or it believed or should have reasonably believed that it would incur, debts beyond its ability to pay as they became due thereafter.

84.    The Loan Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B), the *Uniform Fraudulent Transfer Act*, MO. REV. STAT. § 428.024 and the Uniform Voidable Transactions Act, N.Y. DEBT. & CRED. LAW §§ 270-280 and Plaintiff is entitled to a judgment for relief in no less than $163,700.00, the sum that Plaintiff paid Defendant pursuant to the Loan and Loan Documents, and for a declaration that the Loan is void, in addition to attorneys' fees pursuant to N.Y. DEBT. & CRED. LAW § 278(A.)

**ELEVENTH CLAIM FOR RELIEF:**

**AVOIDANCE OF TRANSFERS**

(11 U.S.C. § 544)

(Loan Transfers)

85.    Plaintiff alleges paragraph 1 through 39, inclusive, Paragraphs 81 through 84, inclusive, as though fully set forth herein.

86.    Plaintiff made the Loan Transfers from property of the estate.

87.    Plaintiff did not receive reasonably equivalent value for the Loan Transfers.

88.    At the time Plaintiff made the Loan Transfers, it was insolvent or became insolvent because of such transfers for the following reasons:

A.      The sum of Plaintiff's debts was greater than the value all of Plaintiff's property, determined at a fair valuation;

B.      Plaintiff was engaged or was about to engage in a business or a transaction for which Plaintiff's remaining assets were unreasonably small in relation to the business or transaction; and

18

PMF

C.      Plaintiff intended to incur, or it believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due thereafter.

89.     The Loan Transfers were each made at a time when Plaintiff owed money to at least one creditor, and such creditor holds an unsecured claim that is allowable pursuant to 11 U.S.C. § 502.

**TWELFTH CLAIM FOR RELIEF:**

**PRESERVATION AND RECOVERY OF TRANSFERS**

(11 U.S.C. §§ 550 and 551)

(April 5th Loan)

90.     Plaintiff alleges paragraph 1 through 39, inclusive, Paragraphs 81 through 84 inclusive, and Paragraphs 86, inclusive through 89, inclusive, as though fully set forth herein

91.     The Loan Transfers in the sum of $163,700.00 are avoidable pursuant to 11 U.S.C. § 548(a)(l)(B), MO. REV. STAT. § 428.024, NY DEBT. & CRED. LAW §§ 270-280.

92.     The Loan Transfers in the sum of $163,700.00 is avoidable pursuant to 11 U.S.C. § 548(a)(l)(B), MO. REV. STAT. § 428.024, NY DEBT. & CRED. LAW §§ 270-280.

93.     Plaintiff moves to preserve and recover each transfer as provided by 11 U.S.C. §§ 550 and 551.

19

PMF

## THIRTEENTH CLAIM FOR RELIEF:

### RACKETEERING

(18 U.S.C. § 1961, *et. seq.*)

94.    Plaintiff alleges paragraph 1 through 39, inclusive, Paragraphs 41, inclusive through 45, inclusive, and Paragraphs 70, inclusive through 74 inclusive, and Paragraphs 77, inclusive through 79, inclusive, as though fully set forth herein.

95.    This claim against Defendants PMF and BRUGMAN for civil liability is premised upon 18 U.S.C. § 1961, *et. seq.*, also known as the *Racketeer Influence and Corporate Organizations Act* ("RICO").

96.    As alleged herein, Defendants' actions fall within the scope of this statute, pursuant to 18 U.S.C. § 892:

(a)    Whoever makes any extortionate extension of credit, or conspires to do so, shall be fined under this title, or imprisoned not more than 20 years, or both.

(b)    In any prosecution under this section, if it is shown that all the following factors were present in connection with the extension of credit in question, there is prima facie evidence that the extension of credit was extortionate, but this subsection is nonexclusive and in no way limits the effect or applicability of subsection (a):

(1)    The repayment of the extension of credit, or the performance of any promise given in consideration thereof, would be unenforceable, through civil judicial processes against the debtor (A) in the jurisdiction within which the debtor, if a natural person, resided or (B) in every jurisdiction within which the debtor, if other than a natural person, was incorporated or qualified to do business at the time the extension of credit was made.

(2)    The extension of credit was made at a rate of interest in excess of an annual rate of 45 per centum calculated according to the actuarial method of allocating payments made on a debt between principal and interest, pursuant to which a payment is applied first to the accumulated interest and the balance is applied to the unpaid principal.

(3)    At the time the extension of credit was made, the debtor reasonably believed that either (A) one or more extensions of credit by the creditor had been collected or attempted to be collected by extortionate means, or the nonrepayment thereof had been punished by extortionate means; or (B) the creditor had a reputation for the use of extortionate means to collect extensions of credit or to punish the nonrepayment thereof.

20

PMF

(4)     Upon the making of the extension of credit, the total of the extensions of credit by the creditor to the debtor then outstanding, including any unpaid interest or similar charges, exceeded $100.

97.     PMF and BRUGMAN are employed by or associated with the enterprise.

98.     PMF and BRUGMAN engaged in an enterprise whose activities affect interstate commerce by use of e-mail communications and by use of ACH debits to collect the amounts due pursuant to the Loan Documents.

99.     PMF and BRUGMAN agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff by making the representations that induced Plaintiff to execute the Consulting Agreement and the April 5th Loan.

100.    Pursuant to and in furtherance of its fraudulent scheme, Defendants committed multiple racketeering acts detailed in the above allegations.

101.    The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5) in the normal operation of Defendants' business. Defendants entered into a Loan with Plaintiff and continued to withdraw payments from Plaintiff's bank accounts from April 2022 through September 2022 as a regular means of collecting on the Loans, which were unlawful debts.

## FOURTEENTH CLAIM FOR RELIEF:

### ACCOUNTING

(As to Defendant PMF, only)

102.    Plaintiff alleges paragraph 1 through 39, inclusive, Paragraphs 41, inclusive through 45, inclusive, and Paragraphs 70, inclusive through 74 inclusive, and Paragraphs 77, inclusive through 79, inclusive, as though fully set forth herein.

103.    A relationship exists between the Plaintiff and Defendant PMF that requires an accounting as there is a balance due Plaintiff that can only be ascertained by an accounting.

PMF

104.    There is a lack of remedy under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment as follows:

On the First Claim for Relief for Fraud:

1.    For a judgment for fraud against Defendants;

2.    For recovery of commission paid to Defendants by Plaintiff in the sum of no less than $450,000.00; and

3.    For punitive damages in the sum of $1,500,000.00.

On the Second Claim for Relief for: Recission

4.    For a declaration that the Consulting Agreement is unconscionable and unenforceable; and

5.    For attorneys' fees.

On the Third Claim for Relief for Avoidance of Fraudulent Transfers:

6.    For a judgment avoiding the Commission Transfer.

On the Fourth Claim for Relief for Avoidance of Transfers:

7.    For a judgment avoiding the Commission Transfer.

On the Fifth Claim for Relief for Preservation and Recovery of Transfers:

8.    For a judgment preserving and recovering for the benefit of the estate the avoidable transfers described in the Third and Fourth Claims for Relief as provided in 11 U.S.C. §§ 550 and 551.

On the Sixth Claim for Relief for Declaratory Relief:

9.    For a judgment against PMF and BRUGMAN in the amount of Plaintiff's actual damages, plus treble damages and attorneys' fees;

10.    The transactions in the Loan Documents are loans of money under applicable law;

PMF

11.     Defendants were unlawfully doing business in Missouri when it made the Loans;

12.     The contracts in the Loan Documents are unenforceable and/or void;

13.     Since the contracts in the Loan Documents are void and unenforceable any repayments of principal and interest made with respect to the alleged obligations therein were made for no consideration;

14.     The Loan Documents violate applicable law because each one fails to disclosure a material term of the loans by failing to state the interest rate(s);

15.     For recovery of principal and interest paid to Defendants by Plaintiff; and

16.     For attorneys' fees and court costs.

On Plaintiff's Seventh Claim for Relief for Fraud:

17.     For a judgment for fraud against Defendants;

18.     For recovery of principal and interest paid to Defendants by Plaintiff in the sum of no less than $163,700.00; and

19.     For punitive damages in the sum of $500,000.00.

On the Eighth Claim for Relief for Usury:

20.     For a judgment preserving and recovering for the benefit of the estate the interest paid to Defendants on account of the Loans, plus a penalty equal to be doubled or trebled the interest that Plaintiff paid Defendant on account of the Loans pursuant to applicable law

21.     Declaring each loan unenforceable; and

22.     For attorneys' fees and costs.

On the Ninth Claim for Relief for Unjust Enrichment:

23.     For a judgment that Defendants have unjustly retained the benefit at Plaintiff's expense; and

PMF

24.     For an order of restitution in the amount of at least $163,700.00, as well as damages by the loss of business to Plaintiff, according to proof

On Plaintiff's Tenth Claim for Relief for Avoidance of Fraudulent Transfers:

25.     For a judgment avoiding the Loan Transfers.

On Plaintiff's Eleventh Claim for Relief for Avoidance of Transfers:

26.     For a judgment avoiding the Loan Transfers.

On the Twelfth Claim for Relief Preserving and Recovering the Transfers:

27.     For a judgment preserving and recovering for the benefit of the estate the avoidable transfers described in the Tenth and Eleventh Claims for Relief as provided in 11 U.S.C. §§ 550 and 551 in a sum of no less than $163,700.00.

On the Thirteenth Claim for RICO:

28.     For a judgment against Defendants in the amount of the Plaintiff's actual damages, and attorneys' fees and costs as provided by law for no less than $1,000,000.00, to be trebled as allowed by applicable law.

On the Fourteenth Claim for Relief for an Accounting as to PMF:

29.     For an accounting of all funds withdrawn by PMF from Plaintiff's bank accounts from January 1, 2021 through February 13, 2023; and

30.     For an accounting of all funds received by PMF on account of its relationships with Plaintiff and any lender from January 1, 2021 through February 13, 2023.

On all Claims for Relief:

31.     For such other and further relief as the Court deems just and proper.

Dated: October 24, 2023          THE FOX LAW CORPORATION, INC.


By: /s/ *Steven R. Fox*
Steven R. Fox, CA State Bar No. 138808

24

PMF

17835 Ventura Blvd, Suite 306,
Encino, California A 91316
Tel: (818) 774-3545; Fax (818) 774-3707
Srfox@foxlaw.com

EVANS & MULLINIX, P.A.


By: /s/ *Colin N. Gotham*
Colin N. Gotham, KS #19538; MO#52343
7225 Renner Road, Suite 200
Shawnee, KS 66217
Tel: (913) 962-8700; Fax: (913) 962-8701
cgotham@emlawkc.com

Counsel for Debtor-in-Possession, JLK
Construction, LLC

PMF

**Index of Exhibits**

| *Exhibit "1"* | Consulting Agreement. |
|---|---|
| *Exhibit "2"* | April 5th Loan. |
| *Exhibit "3"* | April 5th Loan Transfers. |

PMF