**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| In re:<br><br>JLK CONSTRUCTION, LLC,<br><br>                        Debtor. | Case No.: 23-50034- btf11<br>Chapter 11 |
| JLK CONSTRUCTION, LLC,<br><br>                        Plaintiff,<br><br>v.<br><br>PREMIUM MERCHANT FUNDING 18, LLC, a Delaware limited liability company; ABE BURGER, an individual; SAMUEL A. BRUGMAN, an individual,<br><br>                        Defendants. | Adv. Pro. No. 23-04032 |

**<u>FIRST AMENDED COMPLAINT FOR:</u>**

**CONSTRUCTIVE FRAUD - (CONSULTING AGREEMENT); AVOIDANCE**

**OF FRAUDULENT TRANSFERS; AVOIDANCE OF TRANSFERS;**

**PRESERVATION AND RECOVERY OF TRANSFERS; DECLARATORY**

**RELIEF; CONSTRUCTIVE FRAUD - (APRIL 5TH LOAN); PRESERVATION**

**AND RECOVERY OF TRANSFERS; AVOIDANCE OF FRAUDULENT**

**TRANSFERS, AVOIDANCE OF TRANSFERS;**

**AND RACKETEERING (18 U.S.C. § 1962)**

1

# I.

# INTRODUCTION,

# JURISDICTION, AND VENUE

Plaintiff JLK CONSTRUCTION, LLC, a Missouri limited liability company, the debtor and debtor-in-possession in the above-entitled case (the "Debtor" or "Plaintiff") hereby respectfully alleges and states as follows:

1. Plaintiff, a Missouri limited liability company, is the debtor and debtor-in-possession in the Bankruptcy Case, with the rights, powers, and duties of a trustee. 11 U.S.C. §§1107 and 704.

2. At all times herein mentioned, Defendant PREMIUM MERCHANT FUNDING 18, LLC, is a Delaware limited liability company with its principal place of business in New York ("PMF") and which is not and was not registered to transact business in the State of Missouri, and which therefore unlawfully transacted business in the State of Missouri in violation of MO. REV. STAT. § 347.153 (2015), when it fraudulently induced a small Missouri business, the Plaintiff here, to make fraudulent loans that PMF misleadingly labeled a sale of "future receipts." Plaintiff is further informed and believes and based thereon alleges that PMF solicits loans and brokers loans for other lenders who made loans to this Debtor, including, but not limited to Legend Advance Funding II, LLC, White Road Capital, LLC, dba GFE Holdings and GCM CAPITAL LLC.

3. Plaintiff is informed and believes and based thereon alleges that Defendant

2

ABE BURGER, is an individual residing in the State of New York ("BURGER") and the Chief Operating Officer for PMF.

4. Plaintiff is informed and believes and based thereon alleges that Defendant SAMUEL A. BRUGMAN, is an individual residing in the State of Michigan ("BRUGMAN") and at all times mentioned was an account manager for PFM.

5. Plaintiff filed a petition under Chapter 11 of Title 11 of the United States Code on February 13, 2023 (the "Petition Date"), initiating In re JLK Construction, LLC, Case No. 23-50034-BTF (the "Bankruptcy Case").

6. The claims in this adversary proceeding arise in and relate to the Bankruptcy Case.

7. The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

8. This adversary proceeding is a core proceeding pursuant to inter alia, 28 U.S.C. §§ 157(b)(2)(A), (E), (F) and (H) and (O) or a related proceeding pursuant to 28 U.S.C. §1334(b).

9. If this adversary proceeding is determined to be a non-core proceeding, Plaintiff consents to the entry of final orders and judgments by the bankruptcy judge. Each Defendant is hereby notified that Fed. R. Bankr. P. 7012(b) requires it to admit or deny whether this adversary proceeding is a core or non-core proceeding and, if non-core, to state whether each Defendant consents, or does not consent, to the entry of final orders or judgment by the bankruptcy judge.

10.     This adversary proceeding is a civil proceeding arising in and related to the Bankruptcy Case, and such case is pending before this Court. Accordingly, venue in this Court is proper under 28 U.S.C. § 1409(a).

11.     Plaintiff is unaware of the names of other potential defendants who may be responsible for the unlawful practices, acts, conduct, and occurrences alleged herein. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of these unknown defendants, and to detail the roles each played once Plaintiff ascertains their identities and/or manner of participation in the wrongful conduct herein described.

12.     At all relevant times, as alleged more fully herein, each Defendant acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint-venturer of the other Defendant, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture. Each of the Defendants' acts alleged herein was done with the permission and consent of each of the other Defendants.

## II.

## FACTUAL BACKGROUND

13.     Beginning in or about 2019, Plaintiff received telephone solicitations from BRUGMAN on PMF's behalf, offering PMF's Premium Business Financing Service.

14.     On or about February 1, 2022, by interstate cell phone communication and interstate e-mail communication, Defendants' Premium Financing Service pitch to

Plaintiff was that:

A. Lenders for which it brokered transactions were legitimate business lenders;

B. Lenders for which it brokered transactions charged reasonable interest rates;

C. Loans which it brokered were based on commercially reasonable terms that would be repaid from daily or weekly withdrawals from Plaintiff's bank account; and

D. Lenders for which it brokered transactions would work with Plaintiff just like a bank but would be easier to work with than a bank.

15. When Defendants made the foregoing representations and offered financing to Plaintiff, Defendants were aware of the following facts:

A. Plaintiff was a Missouri limited liability company;

B. Plaintiff was in Buchanan County, Missouri;

C. Plaintiff had no regular business operations outside of Missouri; and

D. Plaintiff had no contacts with New York, Defendants' place of business and state of organization, the stated jurisdiction, venue, and choice of law designated by the agreements discussed below.

**FIRST CLAIM FOR RELIEF:**

**CONSTRUCTIVE FRAUD - Consulting Agreement**

**(AGAINST ALL DEFENDANTS)**

5

16. Plaintiff alleges paragraph 1 through 15, inclusive, as though fully set forth

herein.

17. On or about February 14, 2022, Plaintiff and Defendant executed a one-

year Consulting Agreement pursuant to which Defendants contracted to provide a:

> ... broad array of services and solutions for small businesses. PMF advises
> merchants on reliable, safe, and innovative financing and payments
> solutions combined with *individualized* attention to provide *tailored*
> solutions that respond to the various needs of the business, including but
> not limited to Accounting, Payroll Processing, Marketing, Branding and
> more. Our all-inclusive bundle will provide Client with a thorough review
> of the various metrics of their business and provided *tailored* solutions that
> solve the business's most pressing needs. (Emphasis added.)
> A true and correct copy of PMF's Consulting Agreement is attached hereto as

*Exhibit "1"* and incorporated herein as though fully set forth.

18. Pursuant to the Consulting Agreement, Plaintiff agreed to pay a 9% flat fee

commission for Defendants' services payable at the earlier of the (i) completion of any of

the services contemplated by the Consulting Agreement or (ii) the delivery of any

financing.

19. At all times mentioned herein, as a result of the Consulting Agreement,

Defendants acted as Plaintiff's agent and accepted fiduciary duties to Plaintiff to act in

the best interests of the Plaintiff's business.

20. Plaintiff relied on Defendants' representations of the array of services for

which the parties contracted, and which Defendants promised to provide, to Plaintiff's

detriment. Defendants' failures to provide its promised services substantially defeated the

purpose of the Consulting Agreement.

21.        Thereafter, Defendants failed to provide the services as represented in the Consulting Agreement resulting in a failure of consideration. Instead of providing individualized attention to provide a tailored solution to respond to Plaintiff's monthly cash flow deficits, within weeks of the execution of the Consulting Agreement, Defendants, and each of them, were self dealing in violation of their fiduciary duties.

22.        Defendants, and each of them, within six weeks of becoming Plaintiff's fiduciary pursuant to the Consulting Agreement, arranged a U.S. Small Business Administration loan dated March 31, 2022 between Plaintiff and Newtek Small Business Finance, LLC ("Newtek") in the principal amount of $5,000,000.00 with a variable interest rate of Prime plus 2.75% and a maturity date of March 31, 2032 (hereinafter "Newtek Loan"), pursuant to which Plaintiff executed a Security Agreement, UCC Financing Statement, a Mortgage pledging personal and real property collateral to Newtek. Plaintiff's principal, Jesse L. Kagarice, executed an Unconditional Guarantee; his spouse, Jayme M. Kagarice, executed an Unconditional Limited Guarantee and each of them executed a Deed of Trust on their personal residence in favor of Newtek. Attached hereto as *Exhibit "2"* is a true and correct copy of the Proof of Claim filed by Newtek pursuant to 11 U.S.C. § 501 containing copies of the Deed of Trust, guarantees, Security Agreements encumbering collateral and incorporated herein as though fully set forth.

23.        Attached as *Exhibit "3"* is a true and correct copy of a March 4, 2022 letter

7

from Newtek confirming approval of the loan and containing a Buyer's ALTA Settlement

Statement. Said letter and its attachments are incorporated herein as though fully set

forth. The ALTA Settlement Statement provides the sums to be paid to third parties to

discharge those obligations, but there is no disbursement identified for PMF.

24.        On or about April 1, 2022, pursuant to a request and forwarded wiring

instructions from BRUGMAN within six weeks of entering the Consulting Agreement,

Plaintiff transferred to Defendants, and each of them, the sum of $450,000.00 as payment

for its commission on the Newtek Loan that Defendants brokered ("Commission

Transfer").

25.        Plaintiff's borrowing $5,000,000.00 to consolidate multiple loans did not

appreciably lower its monthly obligations or cure its cash flow deficits. Moreover, the

ALTA Settlement Statement attached to *Exhibit "3"* indicates that the funds being

delivered to Plaintiff as working capital were in the amount of $556,478.57. After

payment of PMF's 9% loan commission of $450,000, Plaintiff only realized $106,478.57

in loan proceeds.

26.        Defendants and each of them knew or should have known that the

Consulting Agreement created fiduciary duties owed by Defendants, and each of them, to

Plaintiff. Defendants, and each of them promised to render individualized and tailored

solutions for Plaintiff's business needs. The duty required that Defendants and each of

them not place their own personal interests above those of Plaintiff in rendering the

services promised.

8

27.	Plaintiff relied upon these promises and was thereby induced to enter the Newtek loan believing Defendants and each of them would only be presenting Plaintiff with fiduciary advice, including loan advice, that would be in Plaintiff's best interest.

28.	Defendants and each of them failed to provide services in Plaintiff's best interest by having Plaintiff enter the $5,000,000.00 Newtek loan which simply shifted debt obligations and provided no material net benefit to Plaintiff and, in fact, increased its total debt by approximately $1,000,000.00. The primary purpose of the conduct of Defendants and each of them was to receive the 9% commission, in the sum of $450,000.00, which hastened Plaintiff's demise leading to Chapter 11 by plunging it deeper into debt.

29.	As a proximate result of the breach of fiduciary duty by Defendants and each of them, Plaintiff was damaged by the above-described fraud in a sum of not less than $450,000.00.

30.	Defendants' MCA Loan Documents provide for recovery of attorneys' fees and costs and Plaintiff is therefore entitled to an award of attorneys' fees and costs pursuant to Missouri law, MO. REV. STAT. § 455.075 (2022) and New York Law, N.Y. DEBT. & CRED. LAW § 278(A).

31.	Defendants' and each of them, acted maliciously, oppressively, constructively fraudulent, egregiously and intentionally towards Plaintiff in disregard of Plaintiff's rights. Plaintiff is entitled to punitive damages in the sum of $1,500,000.00.

**SECOND CLAIM FOR RELIEF:**

**AVOIDANCE OF FRAUDULENT TRANSFER**

(11 U.S.C. § 548(a)(l)(B), MO. REV. STAT. § 428.024,

NY DEBT. & CRED. LAW §§ 270-280)

(Consulting Agreement)

32.        Plaintiff alleges paragraph 1 through 15, inclusive, and paragraphs 17 through 29, inclusive, as though fully set forth herein.

33.        As alleged above, by virtue of the Consulting Agreement, Defendants and each of them owed Plaintiff a fiduciary duty not to put their own personal interests ahead of those of Plaintiff. Nevertheless, Defendants and each of them advised Plaintiff to enter the Newtek loan. The loan did not result in any appreciable benefit to Plaintiff, actually increasing its debt by approximately $1,000,000, and after paying Defendants and each of them the 9% commission of $450,000 ("Commission Transfer"), Plaintiff received just over $100,000 in loan proceeds.

34.        Defendants and each of them did not perform their fiduciary duties and breached them such that, within two years of filing for relief, Plaintiff paid far more to Defendants and each of them than the reasonably equivalent value represented by the Commission Transfer.

35.        At the time Plaintiff paid the Commission Transfer to Defendants and each of them, Plaintiff was insolvent or became insolvent because of such transfers for the following reasons:

a.        At the time the loan was made, the sum of the Debtor's liabilities, as

reflected in its balance sheets, was greater than the value of all of Plaintiff's property at a fair valuation. Attached as *Exhibit "6"* are copies of Plaintiff's balance sheets at or near the time of the loans. The balance sheets reflect that at in and around the time of each of the loans, the value of the Debtor's assets at fair value was less than the amount of its debts;

b.          At the time the loan was made, the Debtor was engaged in the business of bidding, negotiating, entering into and providing construction services and labor on construction projects. As part of this business, the Debtor maintained M&E, vehicles, had employees for whom there were payroll costs including taxes. At the time of the loan, Plaintiffs' remaining assets, as reflected in its balance sheets at the various times, were unreasonably small in relation to the loan with Newtek. They were unreasonably small as illustrated by the Proof of Claim of Newtek, *Exhibit "2"*, in that the loan was not fully secured by all Plaintiff's assets; and

c.          Plaintiff, in incurring the payment obligations under the Newtek loan found itself in a position where it could not pay its obligations as regular payments came due. This was the catalyst for a second loan in less than one week directly from PMF on April 5, 2022 putting Plaintiff deeper into debt, in order to meet its obligations.

36.          The Plaintiff made the Commission Transfer at a time when Plaintiff owed money to at least one creditor, and such creditor holds an unsecured claim that is allowable pursuant to 11 U.S.C. § 502.

37.      The Commission Transfer is avoidable pursuant to 11 U.S.C. §

548(a)(1)(B), the *Uniform Fraudulent Transfer Act*, MO. REV. STAT. § 428.024 and the

Uniform Voidable Transactions Act, N.Y. DEBT. & CRED. LAW §§ 270-280 and

Plaintiff is entitled to a judgment for relief in no less than $450,000.00, the sum that

Plaintiff paid Defendant pursuant to the Consulting Agreement, and for a declaration that

the Consulting Agreement is void, in addition to attorneys' fees pursuant TO N.Y. DEBT.

& CRED. LAW § 278(A.)

## THIRD CLAIM FOR RELIEF:

## AVOIDANCE OF TRANSFERS

(11 U.S.C. § 544)

(Commission Transfer)

38.      Plaintiff alleges paragraph 1 through 15, inclusive, Paragraphs 17 through

29, inclusive, and Paragraphs 33 through 37 inclusive, as though fully set forth herein.

39.      Plaintiff made the Commission Transfer from property of the estate.

40.      Plaintiff did not receive reasonably equivalent value for the Commissions

Transfer.

41.      At the time Plaintiff made the Commission Transfer, Plaintiff was insolvent

or became insolvent because of such transfers for the following reasons:

a.      At the time the loan was made, the sum of the Debtor's liabilities, as

reflected in its balance sheets, was greater than the value of all of Plaintiff's property at a

fair valuation. Attached as *Exhibit "6"* are copies of Plaintiff's balance sheets at or near

12

the time of the loans. The balance sheets reflect that at in and around the time of each of

the loans, the value of the Debtor's assets at fair value was less than the amount of its

debts;

b.         At the time the loan was made, the Debtor was engaged in the business of

bidding, negotiating, entering into and providing construction services and labor on

construction projects. As part of this business, the Debtor maintained M&E, vehicles, had

employees for whom there were payroll costs including taxes. At the time of the loan,

Plaintiffs' remaining assets, as reflected in its balance sheets at the various times, were

unreasonably small in relation to the loan with Newtek. They were unreasonably small as

illustrated by the Proof of Claim of Newtek, *Exhibit "2"*, in that the loan was not fully

secured by all Plaintiff's assets; and

c.         Plaintiff, in incurring the payment obligations under the Newtek loan found

itself in a position where it could not pay its obligations as regular payments came due.

This was the catalyst for a second loan in less than one week directly from PMF on April

5, 2022 putting Plaintiff deeper into debt, in order to meet its obligations.

42.        Plaintiff made the Commission Transfer when it owed money to at least

one creditor, and such creditor holds an unsecured claim that is allowable pursuant to 11

U.S.C. § 502.

43.        The Commission Transfer is avoidable pursuant to 11 U.S.C. § 544 and the

Missouri Uniform Fraudulent Transfer Act, MO. REV. STAT. § 428.024 as well as the

Uniform Voidable Transactions Act, N.Y. DEBT. & CRED. Law §§ 270-280.

## FOURTH CLAIM FOR RELIEF:

## PRESERVATION AND RECOVERY OF TRANSFERS

(11 U.S.C. §§ 550 and 551)

(Commission Transfer)

44.  Plaintiff alleges paragraph 1 through 15, inclusive, Paragraphs 17 through 29, inclusive, and Paragraphs 33 through 37, inclusive, Paragraphs 39 through 42, inclusive, as though fully set forth herein.

45.  The Commission Transfer in the sum of $450,000.00 is avoidable pursuant to 11 U.S.C. § 548(a)(l)(B), MO. REV. STAT. § 428.024, NY DEBT. & CRED. LAW §§ 270-280.

46.  Plaintiff seeks judgment to preserve and recover the Commission Transfer as provided by 11 U.S.C. §§ 550 and 551.

## FIFTH CLAIM FOR RELIEF:

## DECLARATORY RELIEF

(April 5th Loan)

47.  Plaintiff alleges paragraph 1 through 15, inclusive, and paragraphs 17 through 29, inclusive, as though fully set forth herein.

48.  Plaintiff alleges the transaction documented and reflected in *Exhibit "4"* was and is void *ab intio* and unenforceable pursuant to New York law that provides that for a criminally usurious loan is unenforceable. Defendant's loan to Plaintiff was and is criminally usurious. N.Y. PENAL LAW § 190.42.

14

49.　　　　Defendants, and each of them, are in the business of brokering and/or funding predatory loans to small businesses.

The April 5th Loan

50.　　　　On April 5, 2022, Defendants made a loan of money to Plaintiff, in the amount of $100,000.00 ("April 5th Loan"), for which Plaintiff was required to repay Defendant PMF the sum of $147,000.00 ("Receivables Purchased Amount") within 120 business days. Attached hereto as *Exhibit "4"* is a true and correct copy of the Merchant Agreement (the "Loan Documents") pursuant to which Defendants made such loan to Plaintiff. Plaintiff paid Defendants and each of them $163,700.00.

51.　　　　Plaintiff alleges the transaction documented and reflected in the Loan Documents was a loan of money under Missouri and New York law. Defendants disputes this contention and alleges the transaction reflected in the Loan Documents are purchases of future receipts, not loans.

52.　　　　The effective daily interest on the April 5th Loan was .8063%, or 294.3% annually, more than the allowable interest rate pursuant to New York or Federal law.

53.　　　　As part of their scheme, Defendants drafted the Loan Documents without disclosing a material term of the loan, i.e., the interest rate, that it charged to Plaintiff. Plaintiff made no alternations to Defendants' form loan document. In fact, Plaintiff alleges that the interest rate charged by the Defendant to the Plaintiff was exorbitant, unconscionable, and criminal.

54.    Defendants transmitted the Loan Documents to Plaintiff by interstate e-mail transmission for signature by DocuSign.

55.    The Loan Documents do not identify Plaintiff's receivables that Defendants purported to purchase by date, percentage, name, or any other identifying data that demonstrate Plaintiff's ownership of such receivables.

56.    By virtue of the Consulting Agreement between Plaintiff and Defendant PMF, PMF incurred fiduciary duties to Plaintiff who was entitled relied upon Defendants' representations and on the basis thereof accepted the April 5th Loan offered by the Defendants.

57.    The Loan Documents dictate that Plaintiff's repayment to Defendants was through Defendants' access to and daily withdrawals of money directly from Plaintiff's designated bank account.

58.    Defendants intentionally failed to disclose the material terms of the April 5th Loan by failing to disclose the interest rate that Defendant charged and that the transaction that Defendants fraudulently offered was and is a loan of money.

59.    The actual purpose of the Loan referenced in *Exhibit "4"* was for the Defendants to loan money to Plaintiff at an annual interest rate of more than 25%.

60.    Defendants knew, or had reasons to know, the Loan bore interest rate of more than 25% per annum.

16

61.        Defendants knew or had reason to know, that Plaintiff would pay Defendants interest at a rate more than 25% per annum on all the funds received from the Loan between Plaintiff and Defendants.

62.        At the time the Defendants made the Loan to Plaintiff, Defendants were transacting business in Missouri through repeated and successive transactions of business with Plaintiff, making the Loan to Plaintiff and taking repeated payments from Plaintiff's bank accounts, beginning in April 2022 through and including September 2022.

63.        Defendants violated Missouri law because PMF was not authorized to conduct business in Missouri. Defendants continued to do business in the State of Missouri by making the Loan and withdrawing funds from Plaintiff's accounts.

64.        Beginning in or about 2019, Defendant PMF continually solicited Plaintiff's business, offering various lending options to Plaintiff to facilitate its Plaintiff's cash flow.

65.        PMF pitched to Plaintiff that:

a. The many lenders for which they brokered transactions, including PMF, were legitimate business lenders;

b. The many lenders for which they brokered transactions, including PMF, charged reasonable interest rates;

c. The loans which they brokered were based on commercially reasonable terms that would be repaid from daily or weekly withdrawals from Plaintiff's bank account; and

17

    d.  The many lenders for which they brokered transactions, including PMF, would work with Plaintiff just like a bank but would be easier to work with than a bank.

66.    When PMF made the foregoing representations and offered financing to Plaintiff, they were aware of the following facts:

    a.  Plaintiff was a Missouri limited liability company;

    b.  Plaintiff had no regular business operations outside of Missouri; and

    c.  Plaintiff had no contacts with New York, Defendant PMF's place of business and state of organization, the stated jurisdiction, venue, and choice of law designated by PMF's documentation.

67.    Defendants' and each of their only concern was and is whether PMF could collect in the event of a default, and not whether the Plaintiff, a small business, could survive.

68.    At all times mentioned, Plaintiff was interested in capital loans to help the company move forward. What Plaintiff received from PMF were documents which identified themselves as purchases of future receipts. Documents for the transactions were forwarded to Plaintiff electronically and followed by phone calls intended to speed Plaintiff's execution indicating the funds were ready to deposit in Plaintiff's account and encouraging Plaintiff's principal to execute the documents without actually reading them, thereby depriving Plaintiff of the opportunity to uncover the bait and switch from a genuine loan to a purchase of future receivables.

69.      The transaction itself was a concealed loan rather than future receipt purchases because the terms of the transactions provided PMF with the right to repayment under all circumstances, including the right to deny reconciliation requests. The Loan Documents shifted the risk of nonpayment to Plaintiff and did not bear a substantial risk of nonpayment because of provisions in the agreement.

70.      None of the Loan Documents identify Plaintiff's receivables that the PMF purported to purchase by date, percentage, name, or any other identifying data that could demonstrate Plaintiff's ownership of such receivables. Plaintiff made no alterations to any of the PMF's form documents, which are contracts of adhesion. A true purchase of future receivables would provide a means to collect from the obligors of those receivables who would actually owe the obligation. Instead, PMF simply took funds directly from Plaintiff's bank account without any consideration of whether those funds represent any receivables purchased.

71.      Defendants, and each of them, intentionally failed to disclose a material term of the Loan by failing to disclose the interest rate that the Defendants charged to the Plaintiff by fraudulently labeling the loan a sale of "future receipts." In fact, Plaintiff sold nothing. The transactions offered and executed were and are loans of money, notwithstanding the language at Section 1.9 that "Merchant and PMF agree that the Purchase Price under this Agreement is in exchange for the Purchased amount and that such Purchase Price is not intended to be, nor shall be construed as a loan from PMF to Merchant."

72.     Defendants intentionally misled Plaintiff by placing on the first page of the Loan Documents a percentage rate of 52% that was intended to confuse, mislead, and trick Plaintiff into believing that the stated interest percentage was the interest rate for the Loan, when in fact, the stated percentage rate related to the percentage of daily receivables to be deducted from Plaintiff's bank account until the loan was repaid.

73.     At the time Defendants, and each of them, made the August 5 Loan to Plaintiff, they were transacting interstate business in Missouri through repeated and successive transactions of business with Plaintiff, making loans to Plaintiff from August 2021 through August 2022 and taking repeated payments from Plaintiff's bank account beginning in August 2021 through November 2022.

74.     Plaintiff made the series of transfers to the PMF identified in *Exhibit "5"* which is attached for informational purposes only and are subject to amendment, and specifically incorporated herein by this reference, on account of the Loans ("Loan Transfers") from the property of Plaintiff in the sum of $163,700.00.

75.     Plaintiff contends that the transactions documented by the Loan Documents (hereinafter "Loans") are loans; Defendants, and each of them, contend that the transactions are sales of future receivables.

76.     Despite their documents form, the transactions are, in economic reality, loans that are absolutely repayable. The true nature of the Loan Documents contain hallmarks of a loan are more fully set forth:

20

a.        The agreements relied on the Plaintiff's creditworthiness, rather than the creditworthiness of Plaintiff's customers, who owed Plaintiff receivables;

b.        Section 1.12 titled "Protections against Default," *see, e.g., Exhibit "4"*, includes an acceleration clause making the balance due and payable upon the event of default, thereby shifting the burden of loss to Plaintiff. ¶ 1.12 <u>Protection 1</u>;

c.        PMF has recourse against Plaintiff's principal based on the guaranty executed concurrently with the Loans, shifting risk of loss to Plaintiff. *See, e.g., Exhibit "4",* ¶ 1.12 <u>Protection 2</u> & ¶ 3.2 <u>Personal Guaranty</u>;

d.        PMF required Confessions of Judgment shifting risk of loss to Plaintiff which PMF is authorized to execute on behalf of Plaintiff. *See, e.g., Exhibit "4",* ¶ 1.12 <u>Protection 3</u>;

e.        PMF has a right of recourse against Plaintiff based on the security agreement executed concurrently with the Loans and because the Loan Documents provide that Plaintiff grants PMF a security interest, shifting risk of loss to Plaintiff. *See, e.g., Exhibit "4"*, ¶ 1.12 <u>Protection 4</u>;

f.        PMF may proceed to protect and enforce its rights and remedies by lawsuit in which Plaintiff shall be liable for all costs and attorneys' fees, shifting risk of loss to Plaintiff. *See, e.g.*, *Exhibit "4",* ¶ 1.12 <u>Protection 5</u> and <u>Protection 6</u>;

g.        PMF may exercise its rights under the assignment of Plaintiff's lease, shifting risk of loss to Plaintiff. *See, e.g., Exhibit "4",* ¶ 1.12 <u>Protection 7</u>;

h.       PMF may debit Plaintiff's depository accounts wherever situated by means of ACH, shifting risk of loss to Plaintiff. *See, e.g., Exhibit "4",* ¶ 1.12 Protection 8;

i.       Events of default include any violation of the agreement as outlined in Section 1.12 of *Exhibit "4"* and if funds are unavailable for transfer via ACH or any other default; *See, e.g., Exhibit "4",* ¶ 3.1 Events of Default;

j.       The Loan Documents provide a reconciliation provision at ¶ 1.4. However, despite the financial difficulty Plaintiff was experiencing and disclosing to Defendants and each of them, instead of adjusting the Daily Remittance, PMF sought another loan for Plaintiff disguised as a purchase of receivables to GFE NY, LLC on July 13, 2022. PMF, however, never reconciled Plaintiff's payments nor offered to do so after the loans were processed, which shifted the risk of loss to Plaintiff; and,

k.       The selection of daily payment rates did not represent a good faith estimate of receivables.

77.     PMF's Loan Documents provide for recovery of attorneys' fees and costs and Plaintiff is therefore entitled to an award of attorneys' fees and costs pursuant to New York Law, N.Y. DEBT. & CRED. LAW § 278(A).

78.     Plaintiff seeks a declaration by the Court that the transactions which are the subject of this action are disguised loans and not a sale of future receivables.

## SIXTH CLAIM FOR RELIEF:

## CONSTRUCTIVE FRAUD

(April 5th Loan)

79.        Plaintiff alleges Paragraphs 1 through 15, inclusive, Paragraphs 17, through Paragraph 29, inclusive, and Paragraphs 48 through 77, inclusive, as though fully stated in full herein.

80.        PMF is in the business of making and brokering loans to small businesses such as Plaintiff.

81.        Beginning on or about 2019, Plaintiff received telephone solicitations from PMF, offering PMF's Premium Business Financing Service and Custom Small Business Solutions, which includes credit servicing, credit card processing, bookkeeping, payroll, SEO (Search Engine Optimization), and employee retention credit program as well as Merchant Cash Advances, Line of Credit, Equipment Financing, Mortgage Financing, Term Loans, Factoring, P.O. Financing, and SBA Loans. PMF offers business consulting services in addition to brokering loans and making loans itself.

82.        On or about February 1, 2022 by interstate cell phone communication and interstate e-mail communication, PMF's Premium Financing Service pitch to Plaintiff was that:

       a.        Lenders for which it brokered transactions were legitimate business lenders;

23

b.      Lenders for which it brokered transactions charged reasonable

interest rates.

c.      Loans which it brokered were based on commercially reasonable

terms that would be repaid from daily or weekly withdrawals from Plaintiff's bank

account; and

d.      Lenders for which it brokered transactions would work with Plaintiff

just like a bank but would be easier to work with than a bank.

83.      On or about February 14, 2022, Plaintiff and Defendant PMF executed a

one-year Consulting Agreement pursuant to which PMF contracted to provide a:

> ... broad array of services and solutions for small businesses. PMF advises
> merchants on reliable, safe, and innovative financing and payments
> solutions combined with *individualized* attention to provide *tailored*
> solutions that respond to the various needs of the business, including but
> not limited to Accounting, Payroll Processing, Marketing, Branding and
> more. Our all-inclusive bundle will provide Client with a thorough review
> of the various metrics of their business and provided *tailored* solutions that
> solve the business's most pressing needs. (Emphasis added.)

A true and correct copy of PMF's Consulting Agreement is attached hereto as *Exhibit*

*"1"* and incorporated herein as though fully set forth.

84.      Throughout the initial negotiations for credit, Plaintiff only inquired about a

loan. Plaintiff is a small Missouri business operated by a single individual with limited

resources, education, and experience in lending. Plaintiff was never informed prior to

entering into the agreement that there would be no interest rate because the transaction

24

was a purchase of receivables.

85.	When Plaintiff agreed to the transaction, it believed it was obtaining a loan. When the Loan Documents were electronically transmitted to Plaintiff's principal, they were followed up with a calls from BRUGMAN of PMF who discouraged any review of the transaction document and focused Plaintiff to simply sign the agreement without reading the document. Plaintiff was rushed through the process with statements about funds being ready to deposit in Plaintiff's bank account for immediate use.

86.	There had never been a meeting of the minds because PMF nor its agent disclosed the transaction was not as described during negotiations and prevented Plaintiff from conducting a review of the agreement prior to execution.

87.	BRUGMAN and PMF knew, or should have known Plaintiff's financial condition. From August 2, 2021 through July 13, 2022, PMF brokered several loans to Plaintiff with various lenders such as GFE NY, LLC and Newtek Small Business Finance, LLC and was fully aware of Plaintiff's financial condition after going through those transactions. Further, the Consulting Agreement gave Defendants and each of them direct access to the books and records of Plaintiff.

88.	Notwithstanding, Defendants and each of them used their position of trust and confidence as a consequence of the Consulting Agreement more fully described above, Plaintiff was influenced by Defendants and each of them to enter the April 5th Loan, the terms of which required daily payments designed to pay the balance over the course of within 120 business days, without disclosing that Defendants were charging an

25

interest rate between 0.8063%, daily an imputed annual interest rate of 294.3%. As a result, each loan was usurious and unconscionable in violation of New York, Missouri, and Federal law. Attached hereto as *Exhibit "4"* is a true and correct copy of the Merchant Agreement (the "Loan Documents") pursuant to which Defendants made such loan to Plaintiff. Plaintiff paid Defendants and each of them $163,700.00.

89.     Plaintiff is informed and believes and based thereon alleges that at all times herein mentioned, that PMF and BRUGMAN and each of them, had actual and constructive knowledge that each was engaging in bait and switch tactics to induce Plaintiff to enter transactions to which it did not agree. Plaintiff would not have agreed to such unreasonable interest rates. This subterfuge was a breach of the fiduciary duties owed by Defendants, and each of them, to Plaintiff.

90.     Had Plaintiff known the truth that the agreements purported to be sales of receivables at extremely high rates of return far in excess of any legal interest imposed by a lawful loan, it would never have entered the transactions.

91.     PMF and BRUGMAN breached the fiduciary duties assumed under the Consulting Agreement by placing their own interests above those of Plaintiff through representing to Plaintiff that the interest rates chargeable for its brokered loans was reasonable and lawful, when in fact they presented Loan Documents drafted with the intent of avoiding New York's usury laws.

92.     PMF and BRUGMAN knew or should have known that they falsely substituted terms of a sale of future receipts and employed an electronic means to sign the

agreements in such a way as to conceal the true nature of the documents.

93.        Plaintiff justifiably relied upon representations that it would be obtaining a loan because only a loan was requested and in response to inquiry regarding interest rates, Plaintiff was informed they were to be reasonable and lawful. Having entered the Consulting Agreement attached as *Exhibit "1"* with PMF in February of 2022, PMF and BRUGMAN assumed fiduciary duties towards Plaintiff to advise on business and finance matters. Plaintiff's reliance was justified because he was entitled to rely on fiduciaries and trusted advisers. Plaintiff was induced to execute the Loan Documents by the Defendants as alleged herein without examining the terms contained within the documents.

94.        As a proximate result of the conduct by Defendants and each of them, Plaintiff has been damaged in a sum of $163,700.00 on account of the Loans Transfers, as set forth in *Exhibits "5,"* inclusive.

95.        The conduct alleged above by PMF and BRUGMAN with respect to Plaintiff was fraudulent, oppressive and malicious in violation of fiduciary duties owed to Plaintiff such that Plaintiff is entitled to punitive damages in the sum of $500,000.00.

<u>**SEVENTH CLAIM FOR RELIEF:**</u>

**AVOIDANCE OF FRAUDULENT TRANSFER**

(11 U.S.C. § 548(a)(l)(B), MO. REV. STAT. § 428.024,

NY DEBT. & CRED. LAW §§ 270-280)

(April 5th Loan)

96.        Plaintiff alleges Paragraphs 1 through 15, inclusive, Paragraphs 17, through

Paragraph 29, inclusive, and Paragraphs 48 through 77, inclusive, and Paragraphs 80

through 93, inclusive, as though fully stated in full herein.

97.        As the result of the April 5th Loan by PMF and BRUGMAN to Plaintiff,

transfers of funds contemplated by the Loan Documents were made to PMF from

Plaintiff in the sum of $163,700.00 ("Loan Transfers") from property of the estate.

98.        Plaintiff did not receive reasonably equivalent value for the Loan Transfers.

As outlined in the Loan Documents, PMF and BRUGMAN would tender funds to

Plaintiff and then recover the funds in much higher amounts. The April 5th Loan provided

Plaintiff with the amount of $100,000.00 for which the PMF required Plaintiff to repay

PMF the sum of $163,700.00. These were funds in exchange for funds. Although PMF

claims it was purchasing future receivables, the transactions were actually loans which

violated New York State usury law. The loan is unenforceable under New York law.

99.        At the time Plaintiff made the Loan Transfers, it was insolvent, or became

insolvent because of such transfers for the following reasons:

        a.  At the time the loan was made, the sum of the Debtor's liabilities, as

reflected in its balance sheets, was greater than the value of all of Plaintiff's property at a

fair valuation. Attached as *Exhibit "6"* are copies of Plaintiff's balance sheets at or near

the time of the loan. The balance sheets reflect that at in and around the time of each of

the loans, the value of the Debtor's assets at fair value was less than the amount of its

debts;

28

b. At the time the loan was made, the Debtor was engaged in the business of bidding, negotiating, entering into and providing construction services and labor on construction projects. As part of this business, the Debtor maintained M&E, vehicles, had employees for whom there were payroll costs including taxes. At the times of each of the loans, the Plaintiffs' remaining assets, as reflected in its balance sheets at the various times, were unreasonably small in relation to the loans with PMF. They were unreasonably small because the loans called for large payments are frequent intervals and these payments disrupted the Debtor's ability to meet its other expenses; and

c. Plaintiff, in incurring the payment obligations under the loan from PMF, found itself in a position where it could not pay the loans as the regular payments came due.

100. The Plaintiff made the Loan Transfers at a time when Plaintiff owed money to at least one creditor, and such creditor holds an unsecured claim that is allowable pursuant to 11 U.S.C. § 502.

101. The Loan Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B), the Uniform Fraudulent Transfer Act, MO. REV. STAT. § 428.024 and the Uniform Voidable Transactions Act, N.Y. DEBT. & CRED. LAW §§ 270-280 and Plaintiff is entitled to a judgment for relief in no less than $163,700.00, the sum that Plaintiff paid Defendant pursuant to the Loan and Loan Documents, and for a declaration that the Loan is void, in addition to attorneys' fees pursuant to N.Y. DEBT. & CRED. LAW § 278(A.)

## EIGHTH CLAIM FOR RELIEF:

## AVOIDANCE OF TRANSFERS

(11 U.S.C. § 544)

(April 5th Loan)

102.      Plaintiff alleges Paragraphs 1 through 15, inclusive, Paragraphs 17, through

Paragraph 29, inclusive, and Paragraphs 48 through 77, inclusive, Paragraphs 80 through

93, inclusive, and Paragraphs 97 through 101, inclusive, as though fully stated in full

herein.

103.      As the result of the April 5th Loan by PMF and BRUGMAN to Plaintiff,

transfers of funds contemplated by the Loan Documents were made to PMF from

Plaintiff in the sum of $163,700.00 ("Loan Transfers") from property of the Debtor.

104.      Plaintiff did not receive reasonably equivalent value for the Loan Transfers.

As outlined in the Loan Documents, PMF and BRUGMAN would tender funds to

Plaintiff and then recover the funds in much higher amounts. The April 5th Loan provided

Plaintiff with the amount of $100,000.00 for which the PMF required Plaintiff to repay

PMF the sum of $163,700.00. These were funds in exchange for funds. Although PMF

claims it was purchasing future receivables, the transactions were actually loans which

violated New York State usury law. The loan is unenforceable under New York law.

105.      PMF withdrew the Loan Transfers from Plaintiff's bank accounts which are

listed in *Exhibit "6"* hereto, which is attached for informational purpose only and is

subject to amendment, and specifically incorporated herein by reference.

106.     At the time Plaintiff made the Loan Transfers, it was insolvent or became insolvent because of such transfers for the following reasons:

a.     At the time the loan was made, the sum of the Debtor's liabilities, as reflected in its balance sheets, was greater than the value of all of Plaintiff's property at a fair valuation. Attached as *Exhibit "6"* are copies of Plaintiff's balance sheets at or near the time of the loan. The balance sheets reflect that at in and around the time of each of the loans, the value of the Debtor's assets at fair value was less than the amount of its debts;

b.     At the time the loan was made, the Debtor was engaged in the business of bidding, negotiating, entering into and providing construction services and labor on construction projects. As part of this business, the Debtor maintained M&E, vehicles, had employees for whom there were payroll costs including taxes. At the times of each of the loans, the Plaintiffs' remaining assets, as reflected in its balance sheets at the various times, were unreasonably small in relation to the loans with PMF. They were unreasonably small because the loans called for large payments are frequent intervals and these payments disrupted the Debtor's ability to meet its other expenses; and

c.     Plaintiff, in incurring the payment obligations under these five loans from PMF, found itself in a position where it could not pay the loans as the regular payments came due.

107.     Plaintiff made the Loan Transfers at a time when Plaintiff owed money to at least one creditor, and such creditor holds an unsecured claim that is allowable

pursuant to 11 U.S.C. § 502.

108.    Plaintiff contends that the transactions documented by the Loan Documents (hereinafter "Loans") are loans and not a sale of future receivables.

109.    Despite the Loan Documents' form, the transactions are, in economic reality, Loans that are absolutely repayable. The true nature of the Loan Documents contain hallmarks of a loan are more fully set forth:

a.    The agreements relied on the Plaintiff's creditworthiness, rather than the creditworthiness of Plaintiff's customers, who owed Plaintiff receivables;

b.    Section 1.12 titled "Protections against Default," *see, e.g., Exhibit "4"*, includes an acceleration clause making the balance due and payable upon the event of default, thereby shifting the burden of loss to Plaintiff. ¶ 1.12 Protection 1;

c.    PMF has recourse against Plaintiff's principal based on the guaranty executed concurrently with the Loans, shifting risk of loss to Plaintiff. *See, e.g., Exhibit "4"*, ¶ 1.12 Protection 2 & ¶ 3.2 Personal Guaranty;

d.    PMF required Confessions of Judgment shifting risk of loss to Plaintiff which PMF is authorized to execute on behalf of Plaintiff. *See, e.g., Exhibit "4"*, ¶ 1.12 Protection 3;

e.    PMF has a right of recourse against Plaintiff based on the security agreement executed concurrently with the Loans and because the Loan Documents provide that Plaintiff grants PMF a security interest, shifting risk of loss to Plaintiff. *See, e.g., Exhibit "4"*, ¶ 1.12 Protection 4;

f.        PMF may proceed to protect and enforce its rights and remedies by lawsuit in which Plaintiff shall be liable for all costs and attorneys' fees, shifting risk of loss to Plaintiff. *See, e.g.*, *Exhibit "4"*, ¶ 1.12 Protection 5 and Protection 6;

g.        PMF may exercise its rights under the assignment of Plaintiff's lease, shifting risk of loss to Plaintiff. *See, e.g., Exhibit "4"*, ¶ 1.12 Protection 7;

h.        PMF may debit Plaintiff's depository accounts wherever situated by means of ACH, shifting risk of loss to Plaintiff. *See, e.g., Exhibit "4"*, ¶ 1.11 Protection 8;

i.        Events of default include any violation of the agreement as outlined in Section 1.12 of *Exhibit "4"* and if funds are unavailable for transfer via ACH or any other default; *See, e.g., Exhibit "4"*, ¶ 3.1 Events of Default;

j.        The Loan Documents provide a reconciliation provision at ¶ 1.4. However, despite the financial difficulty Plaintiff was experiencing and disclosing to Defendants and each of them, instead of adjusting the Daily Remittance, PMF sought another loan for Plaintiff disguised as a purchase of receivables to GFE NY, LLC on July 13, 2022. PMF, however, never reconciled Plaintiff's payments nor offered to do so after the loans were processed, which shifted the risk of loss to Plaintiff; and,

k.        The selection of daily payment rates did not represent a good faith estimate of receivables.

110.        PMF's Loan Documents provide for recovery of attorneys' fees and costs and Plaintiff is therefore entitled to an award of attorneys' fees and costs pursuant to New York Law, N.Y. DEBT. & CRED. LAW § 278(A).

111.     The Loan Transfers were each made at a time when Plaintiff owed money to at least one creditor, and such creditor holds an unsecured claim that is allowable pursuant to 11 U.S.C. § 502.

112.     The Loan Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B), 11 U.S.C. § 544 and the *Uniform Voidable Transactions Act*, N.Y. DEBT. & CRED. LAW §§ 270-280.

113.     Plaintiff is entitled to a judgment for relief in no less than the sum of the Loan Transfers in the sum of $163,700.00.

## NINTH CLAIM FOR RELIEF:

### PRESERVATION AND RECOVERY OF TRANSFERS

(11 U.S.C. §§ 550 and 551)

(April 5th Loan)

114.     Plaintiff alleges Paragraphs 1 through 15, inclusive, Paragraphs 17, through Paragraph 29, inclusive, and Paragraphs 48 through 77, inclusive, Paragraphs 80 through 93, inclusive, Paragraphs 97 through 101, inclusive, and Paragraphs 103 through 113, inclusive, as though fully stated in full herein.

115.     On April 5, 2022, PMF made a short term loan to Plaintiff. True and correct copies of the Loan Documents are attached hereto as *Exhibit "4"* and incorporated herein by this reference.

116.     At the time Plaintiff made the Loan Transfers, it was insolvent or became insolvent because of such transfers for the following reasons:

a.          At the time the loan was made, the sum of the Debtor's liabilities, as reflected in its balance sheets, was greater than the value of all of Plaintiff's property at a fair valuation. Attached as *Exhibit "6"* are copies of Plaintiff's balance sheets at or near the time of the loan. The balance sheets reflect that at in and around the time of each of the loans, the value of the Debtor's assets at fair value was less than the amount of its debts;

b.          At the time the loan was made, the Debtor was engaged in the business of bidding, negotiating, entering into and providing construction services and labor on construction projects. As part of this business, the Debtor maintained M&E, vehicles, had employees for whom there were payroll costs including taxes. At the times of each of the loans, the Plaintiffs' remaining assets, as reflected in its balance sheets at the various times, were unreasonably small in relation to the loans with PMF. They were unreasonably small because the loans called for large payments are frequent intervals and these payments disrupted the Debtor's ability to meet its other expenses; and

c.          Plaintiff, in incurring the payment obligations under the April 5th Loan from PMF, found itself in a position where it could not pay its debts payments came due.

117.        Plaintiff is informed and believes and based thereon alleges that PMF is the initial transferee of the Loan Transfers, or the entity for whose benefit the said Loan Transfers were made or is the immediate or mediate transferee of the initial transferee receiving such Loan Transfers.

118.      Pursuant to 11 U.S.C. § 550, the Plaintiff is entitled to recover the Loan

Transfers, together with interest thereon.

119.      The Plaintiff is entitled to an order and judgment under 11 U.S.C. §§ 544,

547 and 548 as well as 11 U.S.C. §§ 550 and 551 that the Loan Transfers are avoidable

and recoverable and preserved for the benefit of the Plaintiff's estate.

120.      The Loan Transfers in the sum of $163,700.00 are avoidable pursuant to 11

U.S.C. § 548(a)(l)(B), MO. REV. STAT. § 428.024, NY DEBT. & CRED. LAW §§ 270-

280.

121.      Plaintiff moves to preserve and recover each transfer as provided by 11

U.S.C. §§ 550 and 551.

## TENTH CLAIM FOR RELIEF:

### RACKETEERING

(18 U.S.C. § 1961, et. seq.)

122.      Plaintiff alleges Paragraphs 1 through 15, inclusive, Paragraphs 17, through

Paragraph 29, inclusive, and Paragraphs 48 through 77, inclusive, as though fully stated

in full herein.

123.      In addition to charging unlawful interest, the scheme is designed to trap

small businesses, like Plaintiff, into a never-ending spiral of debt similar to a payday

lending where the small business has to take out additional loans to a prior one.

124.      Although the Loan Documents refer to the transaction as a sale of

receivables, the transactions were, in fact, loans. The true nature of the Loan Documents

contain hallmarks of a loan are more fully set forth:

a.          The agreement relied on the Plaintiff's creditworthiness, rather than the creditworthiness of Plaintiff's customers, who owed Plaintiff receivables;

b.          Section 1.12 titled "Protections against Default," *see, e.g., Exhibit "4"*, includes an acceleration clause making the balance due and payable upon the event of default, thereby shifting the burden of loss to Plaintiff. ¶ 1.12 Protection 1;

c.          PMF has recourse against Plaintiff's principal based on the guaranty executed concurrently with the Loans, shifting risk of loss to Plaintiff. *See, e.g., Exhibit "3"*, ¶ 1.12 Protection 2 & ¶ 3.2 Personal Guaranty;

d.          PMF required Confessions of Judgment shifting risk of loss to Plaintiff which PMF is authorized to execute on behalf of Plaintiff. *See, e.g., Exhibit "4"*, ¶ 1.12 Protection 3;

e.          PMF has a right of recourse against Plaintiff based on the security agreement executed concurrently with the Loans and because the Loan Documents provide that Plaintiff grants PMF a security interest, shifting risk of loss to Plaintiff. *See, e.g., Exhibit "1"*, ¶ 1.12 Protection 4;

f.          PMF may proceed to protect and enforce its rights and remedies by lawsuit in which Plaintiff shall be liable for all costs and attorneys' fees, shifting risk of loss to Plaintiff. *See, e.g., Exhibit "4"*, ¶ 1.12 Protection 5 and Protection 6;

g.          PMF may exercise its rights under the assignment of Plaintiff's lease, shifting risk of loss to Plaintiff. *See, e.g., Exhibit "4"*, ¶ 1.12 Protection 7;

h.        PMF may debit Plaintiff's depository accounts wherever situated by means of ACH, shifting risk of loss to Plaintiff. *See, e.g., Exhibit "4", ¶ 1.11* Protection 8;

i.        Events of default include any violation of the agreement as outlined in Section 1.12 of *Exhibit "4"* and if funds are unavailable for transfer via ACH or any other default; *See, e.g., Exhibit "4", ¶ 3.1* Events of Default;

j.        The Loan Documents provide a reconciliation provision at ¶ 1.4. However, despite the financial difficulty Plaintiff was experiencing and disclosing to Defendants and each of them, instead of adjusting the Daily Remittance, PMF sought another loan for Plaintiff disguised as a purchase of receivables to GFE NY, LLC on July 13, 2022. PMF, however, never reconciled Plaintiff's payments nor offered to do so after the loans were processed, which shifted the risk of loss to Plaintiff; and,

k.        The selection of daily payment rates did not represent a good faith estimate of receivables.

The Unlawful Activity.

125.        New York places a 25% annual limit on the amount of interest that can be charged in connection with providing a loan. N.Y. PENAL LAW §190.42.

126.        The Loan Documents are unconscionable contracts of adhesion that were not negotiated at arm-length. Instead, each contains one-sided terms that prey upon a small business and individual owner's desperation that conceals the fact that the transactions, including those involving Plaintiff, are really loans.

127.        Among the one-sided terms, the Loan Documents include:

a.        a provision giving PMF the irrevocable right to withdraw money directly from the merchant's bank accounts, including collecting checks and assigning invoices in the merchant's name;

b.        a provision preventing the merchant from transferring, moving or selling the business or any assets without PMF's permission;

c.        a one-sided attorneys' fees provision obligating the merchant, Plaintiff, to pay PMF's attorneys' fees but not the other way around;

d.        a venue and choice-of-law provision requiring the merchant to litigate in a foreign jurisdiction under the laws of a foreign jurisdiction;

e.        a personal guaranty, the revocation of which is an event of default;

f.        a jury waiver;

g.        a class action waiver;

h.        a collateral and security agreement providing a UCC lien over all of merchant's assets;

i.        a prohibition of obtaining financing from other sources;

j.        the maintenance of business interruption insurance;

k.        the right to direct all credit card processing payments to PMF;

l.        a power-of attorney "to take any and all action necessary to direct such new or additional credit card processor to make payment to PMF; and

m.        a power of attorney authorizing PMF "to take any action or execute any instrument or document to settle all obligations due…"

39

128.     The Loan Documents are also unconscionable because each contains numerous knowingly false statements. Among these knowingly false statements are that:

a.       the transaction is not a loan;

b.       the daily payment is a good faith estimate of the merchant's receivables;

c.       the fixed daily payment is for the merchant's convenience; and

d.       that the automated ACH program is labor intensive, requiring PMF to charge an exorbitant ACH Program Fee or Origination Fee.

129.     The Loan Documents are also unconscionable because they are designed to fail. Among other things, the Loan Documents are designed to result in a default in the event that the merchant's business suffers any downturn in sales, as follows:

a.       The Loan Documents provide a reconciliation provision at ¶ 1.4, *Exhibit "4."* However, despite the financial difficulty Plaintiff was experiencing and disclosing to Defendants and each of them, instead of adjusting the Daily Remittance, PMF sought another loan for Plaintiff disguised as a purchase of receivables to GFE NY, LLC on July 13, 2022. PMF, however, never reconciled Plaintiff's payments nor offered to do so after the loans were processed;

b.       Preventing the Plaintiff from obtaining other financing; and

c.       Requiring the Plaintiff to continuously represent and warrant that there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Plaintiff's business.

130.     The Loan Documents also contain numerous improper penalties that violate

New York's strong public policy. Among these improper penalties, the Loan Documents:

a. require the merchant to sign a confession of judgment entitling PMF to liquidated attorneys' fees based on a percentage of the amount owed rather than a good faith estimate of the attorneys' fees required to file a confession of judgment;

b. accelerate the entire debt upon an Event of Default; and

c. require the Plaintiff to turn over 100% of all its receivables if it misses just one fixed daily payment.

131. The Loan Documents contain a reconciliation provision to give the appearance that the loans do not have a definite term. Under a legitimate reconciliation provision, if a merchant pays more through its fixed daily payments than it actually received in receivables, the merchant is entitled to seek the repayment of any excess money paid. Therefore, if sales decrease, so do the payments.

132. In order to ensure that Plaintiff could never use their sham reconciliation provision however, the Defendants and each of them, using their position of trust and confidence established by the Consulting Agreement, shifted Plaintiff to another loan disguised as a purchase of receivables to GFE NY, LLC on July 13, 2022. The effective daily interest rate on the July 13th Loan was 0.4640%, or 169.350% annually. PMF, however, never reconciled Plaintiff's payments nor offered to do so after the loans were processed.

133. As a consequence of the scheme used by Defendants, and each of them, the debt, including such debt evidence by the Loan Documents, constitutes unlawful debt

41

within the meaning of 18 U.S.C. § 1962(c) and (d), 18 U.S.C. 1961(6) because (i) it violates applicable criminal usury statues and (ii) the rates are more than twice the legal rate permitted by New York Penal Law ¶ 190.40.

134.    The Defendants would induce small businesses like Plaintiff with promises of loans with legal interest rates and then switch the terms to be a purchase of future receivables. However, by taking a security interest in all of Plaintiff's assets, it is clear that Defendants did not take ownership of any future receivables, which became collateral for an unlawful loan.

135.    The April 5th Loan had an effective interest rate of .8063% daily, or 294.3% annually, more than the allowable interest rate pursuant to New York or Federal law. Further, by domiciling their business in New York, they take advantage of New York law which only permits commercial claims of usury as a defense to collection, thus insulating Defendants and each of them from New York's usury laws' limit of 25% per year. N.Y. PENAL LAW §190.42.

Culpable Persons.

136.    BRUGMAN and BURGER are persons within the meaning of 18 U.S.C. § 1961(3) and § 1982(c) in that each is either an individual, corporation, or limited liability company capable of holding a legal interest in property.

137.    At all times mentioned herein, BRUGMAN and BURGER were and are persons that exists separate and distinct from the Enterprise, described below.

42

The Enterprise.

138.     PMF constitutes an Enterprise (the "Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

139.     Plaintiff is informed and believes and based thereon alleges that BURGER is the Chief Operations Officer with an ownership interest in PMF. BURGER continues to exercise authority over the Enterprise and has authority to execute contracts on behalf of the Enterprise. During the relevant time period, BURGER oversaw the transactions within the Enterprise.

140.     At all times mentioned herein, BRUGMAN was acting on behalf of BURGER in his communications with Plaintiff.

141.     Plaintiff is informed and believes and based thereon alleges that there are potential defendants, currently unknown to Plaintiff. Plaintiff will seek to further amend this pleading when the true names and identities of others utilizing PMF as a vehicle for unlawful debt collection.

142.     BRUGMAN and BURGER are associated in fact and through relations of ownership for the common purposes of collecting on an unlawful debt. Specifically, the Defendants, and each of them, engaged in a common goal of soliciting, funding, servicing, and collecting upon usurious loans that charge interest at more than twice the enforceable rate under the laws of the New York.

143.     Plaintiff is informed and believes and upon such information and believe alleges that Defendants, and each of them, have worked together for a several years and

43

have enjoyed the benefits of construing loans as a purchase of future receivables in order to avoid New York State usury laws and take advantage of borrowers, such as Plaintiff.

144.    Defendants, and each of them, utilized the Consulting Agreement to induce trust, confidence and faith in the services they were to provide, lulling consumers and businesses into a false sense of security, while Defendants, and each of them, took advantage of said trust, confidence and faith.

145.    At all times mentioned herein, and continuing through the present, the members of the Enterprise have had ongoing relations with each other through common control/ownership, and/or one or more contracts or agreements relating to and for the purpose of originating, underwriting, servicing, and collecting upon unlawful debt issued by the Enterprise to small businesses throughout the United States.

146.    New York law looks primarily to the intent of the parties in determining whether a transaction is a loan. As alleged above, the major indicia of whether a transaction is a loan or purchase of future receipts is whether the risk of loss falls on the lender or the borrower. Here, the Loan Documents provide no risk for Defendants and each of them.

147.    Through their operation of PMF, BRUGMAN and BURGER solicit, underwrite, fund, service and collect upon unlawful debt incurred by a Missouri-based small business, Plaintiff here, who was their targeted victim.

148.    As a proximate result of the conduct of Defendants, and each of them, Plaintiff has been damaged in a sum of approximately $163,700.00 constituting the

44

exorbitant rate of interest collected by the Defendants, was required to file for protection under the U.S. Bankruptcy Code, retained and paid counsel and is entitled to treble damages, costs and attorney fees under 18 U.S. Code § 1964.

149.       Plaintiff asserts the Defendants, and each of them, acted with gross fraud, wantonness, maliciousness, or willful disregard for the rights of others, such that Plaintiff is entitled to punitive damages in a sum according to proof.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment as follows:

On the First Claim for Relief for Constructive Fraud:

1.       For a judgment for fraud against Defendants;

2.       For recovery of commission paid to Defendants by Plaintiff in the sum of no less than $450,000.00; and

3.       For punitive damages in the sum of $1,500,000.00.

On the Second Claim for Relief for Avoidance of Fraudulent Transfers:

4.       For a judgment avoiding the Commission Transfer.

On the Fourth Claim for Relief Preservation and Recovery of Transfers:

5.       For a judgment preserving and recovering for the benefit of the estate the avoidable transfers described in the Third and Fourth Claims for Relief as provided in 11 U.S.C. §§ 550 and 551.

On the Fifth Claim for Relief for Declaratory Relief:

6.      For a judicial declaration that the transactions in the Loan Documents are loans of money under applicable law;

On Plaintiff's Sixth Claim for Relief for Constructive Fraud (April 5th Loan):

7.      For a judgment for fraud against Defendants and each of them;

8.      For recovery of principal and interest paid to Defendants by Plaintiff in the sum of no less than $163,700.00; and

9.      For punitive damages in the sum of $500,000.00.

On the Seventh Claim for Relief for Avoidance of Fraudulent Transfers:

10.     For a judgment avoiding the Loan Transfers.

On Plaintiff's Eighth Claim for Relief for Avoidance of Transfers:

11.     For a judgment avoiding the Loan Transfers.

On the Ninth Claim for Relief Preserving and Recovering the Transfers:

12.     For a judgment preserving and recovering for the benefit of the estate the avoidable transfers described in the Tenth and Eleventh Claims for Relief as provided in 11 U.S.C. §§ 550 and 551 in a sum of no less than $163,700.00.

On the Tenth Claim for RICO:

13.     For a judgment against Defendants in the amount of the Plaintiff's actual damages, and attorneys' fees and costs as provided by law for no less than $1,000,000.00, to be trebled as allowed by applicable law.

On all Claims for Relief:

14.     For such other and further relief as the Court deems just and proper.

Dated: July 8, 2024                         THE FOX LAW CORPORATION, INC.

                                            By: /s/ Steven R. Fox
                                            Steven R. Fox, CA State Bar No. 138808
                                            17835 Ventura Blvd, Suite 306,
                                            Encino, California A 91316
                                            Tel: (818) 774-3545; Fax (818) 774-3707
                                            Srfox@foxlaw.com

                                            EVANS & MULLINIX, P.A.

                                            By: /s/ Colin N. Gotham
                                            Colin N. Gotham, KS #19538; MO#52343
                                            7225 Renner Road, Suite 200
                                            Shawnee, KS 66217
                                            Tel: (913) 962-8700; Fax: (913) 962-8701
                                            cgotham@emlawkc.com

                                            Counsel for Debtor-in-Possession, JLK
                                            Construction, LLC

**Index of Exhibits**

| | |
|---|---|
| *Exhibit "1"* | Consulting Agreement. |
| *Exhibit "2"* | Newtek Proof of Claim |
| *Exhibit "3"* | Newtek March 4, 2022 SBA Loan approval letter with Buyer's ALTA Settlement Statement |
| *Exhibit "4"* | April 5th Loan. |
| *Exhibit "5"* | April 5th Loan Transfers |
| *Exhibit "6"* | Plaintiff's Balance Sheets for 2020, 2021 2022 |